UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DORA R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-04114-TWP-TAB |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Dora R.[1] requests judicial review of the final decision of the Deputy Commissioner for Operations of the Social Security Administration (the "SSA"), denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Deputy Commissioner.

### I.     PROCEDURAL BACKGROUND

On September 8, 2011, Dora R. filed an application for DIB, alleging a disability onset date of March 9, 2010. (Filing No. 14-5 at 2.) Her application was initially denied on December 27, 2011, (Filing No. 14-4 at 7), and upon reconsideration on April 18, 2012, (Filing No. 14-4 at 17). Administrative Law Judge Elliott Bunce conducted a hearing on June 4, 2013, (Filing No. 14-2 at 66-106), before issuing an unfavorable decision on June 24, 2013 (the "2013 ALJ Decision") (Filing No. 14-2 at 41). The Appeals Council denied review on September 20, 2014. (Filing No. 14-2 at 2.) Following the filing of a civil suit seeking judicial review, an order issued

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

on May 8, 2015, granted a joint motion to remand the claim. (Filing No. 19-1 at 6.) On October 6, 2015, the Appeal Council issued an order (the "AC Order") vacating the 2013 ALJ Decision and remanding the claim to an Administrative Law Judge. (Filing No. 19-2 at 1-6.) On February 12, 2016, a new hearing was conducted by Administrative Law Judge Michael Carr ("the ALJ"), at which Dora R., represented by counsel, and a vocational expert, James Green, appeared and testified. (Filing No. 15-3 at 4-65.) On July 5, 2016, the ALJ issued a decision (the "ALJ's decision" or the "decision") concluding that Dora R. was not entitled to receive DIB. (Filing No. 15-2 at 38.) On September 15, 2017, the Appeals Council provided notice that they had considered the reasons Dora R. disagreed with the decision but found no reason to assume jurisdiction. (Filing No. 15-1 at 20; *see* 20 C.F.R. § 404.984(a)–(b)(2) (when the Appeals Council does not assume jurisdiction of an appeal after a federal court remand, the ALJ's decision becomes the final decision of the Deputy Commissioner).) On November 6, 2017, Dora R. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) to review the final decision of the Deputy Commissioner denying her benefits. (Filing No. 1.)

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Deputy Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Deputy Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the

claimant for the first four steps; it then shifts to the Deputy Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III. FACTUAL BACKGROUND

Dora R. was 44 years of age at the time she applied for DIB. (Filing No. 14-5 at 2.) She has obtained a GED, certification as a nursing assistant, and has worked as a collections clerk, (Filing No. 15-2 at 49), and a call center operator, (Filing No. 15-2 at 57).[2]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Dora R. was not disabled. (Filing No. 15-2 at 59.) The ALJ found that Dora R. met the insured status requirement for DIB through September 30, 2016. (Filing No. 15-2 at 44.) At step one, the ALJ found that Dora R. had engaged in substantial gainful activity[3] since March 9, 2010, the alleged onset date, during the period beginning in July 2013 through September 2014. (Filing No. 15-2 at 44-46.) However, the ALJ found that there had been "continuous 12-month period(s)" during which Dora R. did not engage in substantial gainful activity, so the ALJ continued to make findings at the later steps of the process pertaining to those periods. (Filing No. 15-2 at 46.) At step two, the ALJ found that she had the following severe impairments: "obesity; hypertension; diabetes mellitus; obstructive sleep apnea/mild ventilator defect/asthma; degenerative joint disease of [the] right knee; degenerative disc disease of the lumbar spine; and degenerative joint disease of the right hip (20 CFR 404.1520(c))." (Filing No. 15-2 at 46.) At step three, the ALJ found that Dora R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 15-2 at 49.) After step three but before step four, the ALJ found that she had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a). The undersigned further reduced the residual functional capacity such that the claimant can occasionally climb ramps/stairs, balance, kneel, stoop, crawl, or crouch, but must never climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to unprotected heights, moving mechanical parts, uneven terrain; occasional exposure to poor ventilation, pulmonary irritants, and humidity; and frequent exposure to extreme cold, extreme heat, and wetness.

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

(Filing No. 15-2 at 50.) At step four, the ALJ concluded, relying on the testimony of the vocational expert ("VE") and considering Dora R.'s RFC, that she was capable of performing her past relevant work as a call center operator. (Filing No. 15-2 at 57.) Proceeding in the alternative to step five, the ALJ found, relying on the testimony of the vocational expert and considering Dora R.'s age, education, work experience, and RFC, that she was capable of performing other work that exists in significant numbers in the national economy as an order clerk, charge account clerk, and circuit board tester. (Filing No. 15-2 at 58.)

## IV. DISCUSSION

Dora R. raises five issues in support of her appeal: A) the ALJ erred at step two by failing to find severe mental impairments pursuant to the AC Order, B) the ALJ erred at step three by failing to discuss the evidence supporting his findings, C) the ALJ erred by not including limitations in his RFC finding for Dora R.'s non-severe mental impairments, D) the ALJ erred by not considering all of Dora R.'s impairments, both severe and non-severe, and E) the ALJ erroneously relied on Dora R.'s attempts to work as evidence that she could perform skilled and semi-skilled work. (Filing No. 19 at 15.) The Court will discuss each issue in turn.

### A. The Appeals Council Order, Mental Impairments

Dora R. first asserts that the ALJ failed to follow the AC Order,[4] which she contends specified that (1) her mental impairments are severe, (2) she has at least moderate difficulties in

---

[4] The parties devote considerable attention to the "law of the case doctrine." (Filing No. 24 at 10; Filing No. 27 at 2-5.) The doctrine applies in this case to a limited extent. "The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case. This consistency protects parties 'from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)). "The law of the case doctrine has been applied to administrative agency proceedings." *Id.* "We stressed that the question of whether the Secretary violated the law of the case on remand is best answered by carefully considering the scope of the district court's remand order." *Id.* at 1061. An agency is bound by a district court's order overseeing the case by judicial review, so long as the order complies with the jurisdictional authority of the court as conveyed by statute. However, the doctrine and its intricacies, developed through case law, do not directly apply to

concentration, persistence, or pace, and (3) her RFC needed to include mental limitations. (Filing No. 19 at 15-17.)

"The very essence of judicial review is to determine whether an agency complies with its own regulations and procedures so that there may be uniformity in decisions." *Moore v. Colvin*, 2013 WL 4584618, at *5 (S.D. Ind. Aug. 28, 2013) (citing *Sierra Club v. Martin,* 168 F.3d 1, 4 (11th Cir. 1999) ("courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself"). "When a Federal court remands a case to the [Deputy] Commissioner for further consideration, the Appeals Council, acting on behalf of the [Deputy] Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision . . .." 20 C.F.R. §404.983. "If the case is remanded by the Appeal Council, the procedures explained in §404.977 will be followed." *Id*. "The administrative law judge shall take any action that is ordered by the Appeal Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §404.977(b).

The AC Order vacated the 2013 ALJ Decision and remanded the case to the ALJ for the resolution of several listed issues, explaining that the 2013 ALJ Decision "finding that the claimant has no severe mental impairment is not supported by substantial evidence." (Filing No. 19-2 at 3.) The AC Order cited specific evidence of record that conflicted with Dora R. not having a severe mental impairment: (1) a global assessment of functioning ("GAF") score of 33 when she began therapy, (2) cognitive testing placing her in the borderline range of intelligence, and (3) a

---

an agency following its own order, as is the case here. The district court order in this case, by joint motion, simply ordered the claim to be remanded and "sent to an administrative law judge for a new administrative hearing at which hearing the plaintiff will be afforded the opportunity to testify, submit additional evidence, and present arguments; and the ALJ will issue a new decision." (Filing No. 19-1 at 6.) The Court finds that the SSA has complied with the district court order.

7

neuropsychological assessment that she had moderate impairment in memory performance and significant problems with maintaining adequate attention and concentration. *Id*. The AC Order concluded that the "indication that the claimant has demonstrated moderate deficits in memory and attention is inconsistent with a finding of 'mild' limitation in the domain of concentration, persistence, or pace." *Id*.

The AC Order specified that upon remand the ALJ would give Dora R. the opportunity to submit additional evidence and take the following action relevant to this appeal:

- Further evaluate the severity of the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

- Give further consideration to the claimant's maximum residual functional capacity, including her mental limitations, and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p).

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.

([Filing No. 19-2 at 4](Filing No. 19-2 at 4).)

The Court finds that the ALJ complied with the AC Order. Contrary to Dora R.'s assertion, the AC Order did not compel any specific finding by the ALJ concerning her mental impairments. It is true that the ALJ also found that Dora R. did not have any severe mental impairments, had mild difficulties in concentration, persistence, or pace, ([Filing No. 15-2 at 46-48](Filing No. 15-2 at 46-48)), and that he did not assess any mental limitations in his RFC finding, ([Filing No. 15-2 at 50](Filing No. 15-2 at 50)). At first blush, these findings would appear inconsistent with the rationale of the AC Order, which did cite specific evidence that conflicted with those same findings in the 2013 ALJ Decision. However, the AC

Order instructed the ALJ to evaluate the severity of her mental impairments according to the regulations, give "further consideration" to her RFC including her mental impairments, and to get evidence from a vocational expert about her ability to work based on "the specific capacity/limitations *established by the record as a whole*." (Filing No. 19-2 at 4 (emphasis added).) The ALJ complied with each of those instructions and cited new evidence of record to substantiate his findings, including most notably Dora R.'s testimony at the second hearing.

The Court finds that there is substantial evidence to support the ALJ's findings that she did not have a severe mental impairment and that her combined mental impairments resulted in mild difficulties with concentration, persistence, or pace. The ALJ noted that Dora R. "claimed she started having memory issues at the beginning of 2010, for which she began taking anti-depressants at the end of 2011. She began seeing improvement in her memory and concentration after only a few months of taking the medication." (Filing No. 15-2 at 48.) A mental condition that is treatable and under control is not a basis for disability benefits. *Prochaska*, 454 F.3d at 737. Dora R. testified that she had noticed changes in her memory lasting about nine months before getting treatment, but "that's where my anti-depression medicine comes in because if I'm -- if I'm not taking it, I can tell. If I don't take it on a regular basis, I'm repeatedly asking or saying stuff that I had already said before or I'm asking the same question over again." (Filing No. 15-3 at 36; Filing No. 15-3 at 46) (Dora R. testified it took only a couple of months using the medication to see improvement with her memory.) The ALJ discussed the low GAF scores when Dora R. began therapy, but noted they were inconsistent with the actual findings of the provider. (Filing No. 15-2 at 46-47.) Consistent with improvement, the ALJ referenced that Dora R. stopped attending individual therapy by November 2012 and had not resumed formalized treatment since. (Filing No. 15-2 at 47.) Following the improvement, Dora R. was able to work for fifteen months at

substantial gainful activity between July 2013 and September 2014. ([Filing No. 15-2 at 44-45](#).) The ALJ noted that she performed skilled work at the Indiana Department of Revenue as a collections clerk and that the job ended not due to job performance, but because she had too many absences related to her housing situation. ([Filing No. 15-2 at 49](#).) Furthermore, the ALJ cited to her testimony that Dora R. had recently interviewed for a call center position, work that she has performed in the past, and she "admitted that she could perform that type of work." ([Filing No. 15-2 at 56](#).) Dora R. testified that she could do her past work at a call center but would need to "prop" up her legs because of swelling.[5] ([Filing No. 15-3 at 41](#).) When asked to clarify if she could have done the call center job with the memory and concentration issues she was having initially in 2010, she testified:

> No because there were days -- my memory issues were severe, like, I said I was going back and forth not remembering a lot of things, repeating myself. I -- I don't think I would have had the concentration to be able to do that -- if I was at that stage where I was then, no.

([Filing No. 15-3 at 42-43](#)). The clear implication of Dora R.'s testimony is that she would have been able to do her past work from a mental standpoint after her improvement with medication, including with any issues she continued to have with memory and concentration. The AC Order did not preclude the ALJ from considering all the evidence, including the new testimony. Moreover, the ALJ's findings were inconsistent with the AC Order, given the updated evidence.

**B.     Step Three, Listing Analysis**

Dora R. contends that the ALJ did not properly explain his finding that her impairments did not meet or medically equal a listing. ([Filing No. 19 at 17-18](#).) Furthermore, Dora R. asserts

---

[5] The ALJ found that Dora R.'s swelling was not related to a medically determinable impairment. ([Filing No. 15-2 at 49](#).) Dora R. does not challenge this finding on appeal. "An individual's symptoms, […] will not be found to affect the ability to perform work-related activities for an adult […] unless medical signs or laboratory findings show a medically determinable impairment is present." SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *3.

10

that the ALJ did not discuss her representative's contentions that she met or medically equaled Listings 1.02, 3.10, and 12.02.  (Filing No. 19 at 18.)

To meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing.  *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three).  In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if he has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance."  *See* 20 C.F.R. § 404.1526(a)-(b).  In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.  *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision.  *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)).  Moreover, the "claimant bears the burden of proving [her] condition meets or equals a listed impairment.  *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

The ALJ's listing analysis in the dedicated section of the decision was conclusory.  However, the Court finds that the ALJ's decision, when read as a whole, sufficiently explains the ALJ's listing analysis.  *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ

repeat substantially similar factual analyses" throughout the decision). Moreover, the Court finds that Dora R. did not meet her burden to provide sufficient evidence that she met or equaled a listing.

SSR 96-6p (S.S.A. July 2, 1996), 1996 WL 374180 at *3, provides that the completion of disability transmittal forms by the state agency medical consultants meets the ALJ's obligation to get expert assistance on medical equivalence. Here, the record contains the disability transmittal forms indicating that the record was reviewed prior to the initial and reconsideration decision, including evidence of obesity, by Jonathan Sands, M.D., Kenneth Neville, Ph.D., Joshua Eskonen, D.O., and Joelle Larsen, Ph.D. (Filing No. 14-3 at 2-3.) The Court does not find that Dora R. has presented sufficient evidence, which was either not reviewed by the experts or not given sufficient consideration by either the experts or the adjudicator, to rebut the presumption that a listing was not met or equaled.

Dora R. contends that the record establishes that she meets or equals Listing 1.02(A) "Major dysfunction of a joint(s) (due to any cause)" because the evidence supports that she meets the necessary requirement that her impairments result in the inability to ambulate effectively.[6] (Filing No. 19 at 18-21.) The relevant regulatory requirement is explained as:

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> [ . . . ]

---

[6] Dora R. cites to authority regarding the ALJ's need to articulate how a claimant's statements concerning their symptoms were undermined, which the Court finds is not relevant to the ALJ's obligation to respond to her representative's legal contentions, such as whether the evidence established listing severity. (Filing No. 19 at 18 (citing *Zurawski v. Halter,* 245 F.3d 881, 887–88 (7th Cir. 2001); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003)).)

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b). Dora R. cites to some relevant evidence of record that she contends established the severity contemplated in the listing, that she has pain with walking more than two hundred feet or standing for an hour or more, needs to use an ACE wrap to run errands, and requires a cane to assist with weight bearing/balance on the right side. (Filing No. 19 at 20-21.) For one, the evidence cited showing an ability to complete activities, albeit with pain and the need for preventative measures with the use of a single ambulatory aid, does not establish the extreme degree of interference described in the regulations. Furthermore, the ALJ explained how even the level of severity alleged by Dora R. was not fully supported by the entire record, including that she appeared at the hearing without a cane, despite contentions it was needed outside the home, and she also testified she was capable of running "big errands" if she got transportation. (Filing No. 15-2 at 56.) Moreover, Dora R.'s testimony, as noted above, did not allege that her ability to perform sedentary work would be precluded by any extreme limitation with the minimal ambulation requirements of that work. Accordingly, the Court does not find sufficient evidence establishing an inability to ambulate effectively, much less sufficient evidence requiring remand under the deferential standard of review.

Dora R. does not even cite evidence that established the level of severity required for Listing 3.10 "Sleep Related Breathing Disorders," instead referencing one arterial blood study that

falls short of the listing requirement and concluding "it cannot be ascertained that the claimant meets or equals the listing from this single study." (Filing No. 19 at 23.) Moreover, the ALJ referenced testimony that Dora R.'s symptoms were improved with compliance with the use of prescribed CPAP machine. (Filing No. 15-2 at 56.)

Furthermore, as noted above, the ALJ's determination that Dora R.'s mental impairments resulted in no more than mild limitations were explained in the decision and supported by substantial evidence considering the record as a whole. Accordingly, the Court does not find that Dora R. has established she has marked limitations necessary to meet Listing 12.02 "Organic mental disorders." (*See* Filing No. 19 at 23-24.)

The Court finds that Dora R. has not met her burden to establish that any listing was met or equaled. The record also does not include any medical opinion that a listing was met or equaled based on the evidence. Given the lack of evidence to rebut the presumption established by the expert consultants' assessments, the Court will not disturb the ALJ's step three findings. *See Scheck*, 357 F.3d at 699–701.

**C.     Mild Mental Limitations**

Dora R. argues that the ALJ failed to account for the mild mental limitations that he found supported by the record when he assessed Dora R.'s RFC. (Filing No. 19 at 27-28.)

SSR 96-8p states in relevant part, that:

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p (S.S.A July 2, 1996), 1996 WL 374184 at *5. Seventh Circuit precedent has observed the same, holding that an ALJ must consider a claimant's RFC by evaluating "all limitations that

arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p); *see Murphy v. Colvin,* 759 F.3d 811, 820 (7th Cir. 2014) ("An RFC determination must account for all impairments, even those that are not severe in isolation."). The regulations also make clear that the SSA "will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' [. . .] when we assess your [RFC]." 20 C.F.R. § 404.1545(a)(2).

The Court agrees that the ALJ's failure to include any mental limitations in his RFC finding was error. The ALJ concluded that Dora R.'s mental impairments resulted in mild difficulties when assessing specific domains in evaluation of her claim at steps two and three. Even if the Court cannot conclude that it is always the case that mild difficulties must result in functional limitations, the ALJ's failure to explain how such a conclusion was reached would constitute error. An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

However, the Court finds the error harmless based on the analysis contained elsewhere in the decision, supported by Dora R.'s testimony. The Seventh Circuit has explained the standard by which error can be ignored by the Court:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010). That would be a waste of time and resources for both the [Deputy] Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the [Deputy] Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

15

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). As noted above, Dora R.'s own testimony established that she was able to perform her past relevant work as a call center operator with whatever mental limitations she still had following improvement with her depression medication. The Court finds that it would be a needless formality to remand the claim for articulation of those specific limitations when the evidence clearly directs the ultimate result of that inquiry.

**D.** **Combined Impairments**

Dora R. argues that the ALJ did not consider numerous impairments, including anemia, right hip bursitis, cor pulmonale, low back pain, numbness and tingling in her arms, legs, and feet, and urinary incontinence. (Filing No. 19 at 28.) As noted above, the ALJ must consider all the impairments when assessing the claimant's RFC.

The Court does not find any error based on an alleged failure to consider Dora R.'s combined impairments. For one, the ALJ expressly considered several of the impairments that Dora R. lists and found them to establish severe impairments, including degenerative disc disease of the lumbar spine and degenerative joint disease of the right hip. The ALJ also discussed the evidence and his conclusions regarding Dora R.'s respiratory problems. (Filing No. 15-2 at 52-53.) The ALJ reduced the exertional level in the RFC to a limited range of sedentary work to account for her breathing problems and included environmental limitations. (Filing No. 15-2 at 53.)

Relatedly, the Court finds that the ALJ's RFC finding that limited Dora R. to a range of sedentary work was appropriate to accommodate the limitations caused by her impairments. With one exception, Dora R. does not develop her argument by demonstrating that the combined impairments would cause any additional limitation beyond those accommodated by the RFC. She does allege that urinary incontinence would require her to take more frequent restroom breaks.

(Filing No. 19 at 30.) However, the ALJ addressed the allegation in his decision, noting that Dora R. had testified that she now staggers her anti-hypertensive and diuretic medications to avoid the problem. (Filing No. 15-2 at 51; *see* Filing No. 15-3 at 43-45 (testimony indicating she has adjusted the time she takes the two medications to avoid the issue).) As noted above, Dora R. testified that she would be able to perform her past relevant work with her combined impairments, other than needing to elevate her legs. Accordingly, the Court does not find any error with the ALJ's RFC finding.

**E.     Work Attempts**

Dora R. argues, largely on policy grounds, that the ALJ should not have used her attempts at work as evidence that she is capable for performing skilled and semi-skilled work, because the "Court should not encourage lethargy, but should encourage all claimants to attempt work without the fear that their impairments will be disregarded because they had a sympathetic employer who allowed them to continue working despite their inability to fulfill all requirements of a job." (Filing No. 19 at 32-33.) Without getting into policy considerations, the Court does not read the ALJ's decision to substantially rely on evidence of work attempts to establish Dora R.'s ability to perform skilled and semi-skilled work. As noted above, Dora R. was able to earn substantial gainful activity for more than a year at a skilled job, which ended for reasons unrelated to her job performance. She also admitted that she would be able to perform her past relevant work at a semi-skilled job from a mental standpoint following improvement with medication. Those relevant considerations support the ALJ's conclusions about her ability to perform skilled and semi-skilled work.

## V.     CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-*

*Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Deputy Commissioner is **AFFIRMED**. Dora R.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 11/7/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jennifer Michelle Hess
HESS HESS & DONNELSON LLP
jen.hess@hhdlegal.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov